UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
JUNG YUN

                    Plaintiff,

          -against-                              07 Civ. 1423 (DAB)
                                                 ORDER
ORCHESTRIA CORPORATION, BO MANNING,
DAVID DILL, BILL BUTLER, NICK WETTON
and PAUL JOHNS,

                    Defendants.
-----------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     On April 24, 2007, Plaintiff Jung Yun ("Plaintiff") brought

suit against Defendant Orchestria Corporation ("Orchestria"), her

former employer, as well as several members of Orchestria's

management (collectively "The Defendants") for discrimination

against her on the basis of gender, race, and national origin, as

well as sexual harassment, breach of contract, fraud, and breach

of the covenant of good faith and fair dealing.  Defendant moves

to Dismiss Plaintiff's Complaint for failure to comply with the

Federal Arbitration Act, 9 U.S.C § 4, (the "FAA") which governs

an arbitration agreement between the parties.  In the

alternative, Defendants move to stay Plaintiff's claims pending

arbitration.


                         I. BACKGROUND

     Plaintiff Jung Yun is a woman of Korean national origin.

(Compl. ¶¶ 2-3.)  Defendant Orchestria is a corporation with its

principal place of business in New York, New York.  (Compl. ¶ 4.)
Defendants Bo Manning, David Dill, Bill Butler, Nick Wetton, and
Paul Johns, were managers at Orchestria during the time of
Plaintiff's employment.  (Comp ¶¶ 5-9.)

Prior to her employment at Orchestria, Plaintiff worked for
the company Zantaz in New York City, where she alleges she was
its top sale executive.  (Compl. ¶¶ 12-13.) In the spring of
2005, Plaintiff was recruited to work for Orchestria by
Defendants Manning and Wetton, and on May 28, 2005 Plaintiff
joined Orchestria after being promised a higher salary,
commissions, and benefits, as well as vested stock options.
(Compl. ¶¶ 15-18.)

On March 30, 2006, Plaintiff and Defendants agreed to the
"Orchestria Corporation 2006 Sales Executive Compensation Plan,"
which provided terms and conditions for Plaintiff's continued at-
will employment, as well as terms for the payment of sales
commissions to Plaintiff.  (Dill Aff. in Fur. Supp. at Ex. A (the
"Plan").)  The Plan also provided that "[t]o be eligible to earn
commissions under this Plan, the [employee] must . . . execute
the attached Mutual Agreement to Arbitrate Claims. . . No
commission will be considered earned or payments made until the
Plan and Arbitration Agreement is signed by the [employee]."
(Id. at § VIII (E).)

On June 5, after E-mail and verbal discussions with multiple

2

members of Orchestria's management, Plaintiff signed the Arbitration Agreement referenced in Section VIII (E) of the Plan and on June 6, 2006 faxed the Agreement to Defendant Dill.  (Yun Certification, ¶¶ 3-7; Dill Aff. at Ex. A (the "Agreement" or "Arbitration Agreement").)  The Agreement provides that the parties consent to "the resolution by arbitration of all claims or controversies . . . past, present or future, arising out of the Company's Sales Executive Compensation Plans," (Arbitration Agreement at 1), and that the parties "agree that neither shall initiate or prosecute any lawsuit or administrative action (other than as required by the SEC, the EEOC, or the NLRB) in any way related to any claim covered by this Arbitration Agreement." (Id.)[1]

Additionally, the Agreement provides that "the arbitration shall take place in New York, New York" and "shall appply the substantive law . . . of the state of Delaware.  (Id.)   It further states that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration

---

[1] The Agreement also provides that "the arbitration will be held under the auspices of either the American Arbitration Association ("AAA") or Judical Arbitration & Mediation Services, Inc. ("JAMS"), with the designation of the sponsoring organization to be made by the party who did not initiate the claim."

Agreement, including but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable." (Id.) Finally, the Agreement notes that "the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to [the Arbitration Agreement.]" (Id. at 2.)

Plaintiff alleges that despite positive performance, recognition, and the generation of sales commissions of $2,500,000.00, she was terminated on June 27, 2006 without cause. (Compl. ¶¶ 20-23, 33.) However, Plaintiff alleges that management created false pretenses in order to justify her termination. (Compl. ¶ 21.) Furthermore, during her tenure at Orchestria, Plaintiff alleges that its management fabricated revenue numbers for the Board of Directors and customers, discriminated against her and other employees on the basis of gender, race, and national origin, sexually harassed her and other female employees, and failed to take action to stop that harassment. (Compl. ¶¶ 25-32, 35-38.)

## II. DISCUSSION

### A.   Legal Standard

Although under the FAA the presumption is that courts should resolve the issue of arbitrability, that issue may nevertheless "be referred to the arbitrator if there is clear and unmistakable

4

<u>evidence</u> from the arbitration agreement . . . that the parties
intended that the question of arbitrability shall be decided by
the arbitrator"). <u>Contec Corp. v. Remote Solution, Co., Ltd.</u>,
398 F.3d 205, 208; <u>see also</u> <u>Alliance Bernstein Inv. Research and</u>
<u>Management, Inc. v. Schaffran</u>, 445 F.3d 121, 125 (2d Cir. 2006)
(same).

    B. <u>The Allegations of Fraud in the Inducement are Arbitrable</u>

    Defendants have made a prima facie showing that Plaintiff
signed the Arbitration Agreement on June 5, 2006.  <u>See</u> (Def. Mem.
of Law, Ex. A (the "Arbitration Agreement")).[2]  Plaintiff
contends, however, that the Arbitration Agreement is invalid
because Defendants "fraudulently induced her to sign the
arbitration agreement by repeatedly promising to pay her
commissions that she earned when they had no intention of ever

---

    [2] Although Defendant Orchestria apparently never signed the
Arbitration Agreement, Plaintiff does not contend that this
renders the agreement unenforceable against her.  Furthermore,
under New York law "a written contract may be formed from more
than one writing [or] may consist of letters bearing the
signature of only one party."  <u>BGL Development, Inc. v. Xpedite</u>
<u>Systems, Inc.</u>, 184 F.Supp.2d 360, 361 (S. D. N. Y. 2002) (citing
<u>Consarc Corp. v. Marine Midland Bank, N.A.</u>, 996 F.2d 568, 572-73
(2d Cir. 1993)).  Here the Arbitration Agreement was explicitly
referenced by the Compensation Plan that Orchestria signed, and
it was Orchestria who sought Plaintiff's signature to the
Arbitration Agreement, objectively signifying its own intent that
the Arbitration Agreement become a part of its agreement with
Plaintiff.  <u>Flores v. Lower East Side Service Center, Inc.</u>, 4
N.Y.3d 363, 369 (N.Y. 2005)("[A]n unsigned contract may be
enforceable, provided there is objective evidence establishing
the parties intended to be bound.").

paying her any commissions whatsoever." (Plt's Rep. Mem. of Law, at 3; see also Plt's Mem. of Law, at 2 ("Jung was coerced and deceived into signing an Arbitration Agreement.")).

The Arbitration Agreement provides in pertinent part that: "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable." (Arbitration Agreement at 1.) Hence, there is clear and unmistakable evidence from the unambigious language of the Arbitration Agreement that the parties intended the question of whether the Agreement is itself enforceable, void, or voidable, to be determined by the arbitrators. Furthermore, the question of the scope or applicability of the Arbitration Agreement is also clearly and unmistakenly delegated to the arbitrators under their authority to determine any dispute as to the Agreement's 'applicability.'

Accordingly, it is for the arbitrators to determine whether Plaintiff was fraudulently induced into signing the Arbitration Agreement, as well as to determine which of Plaintiff's claims are arbitrable in the event that the Agreement is found to have effect.

C. Motion to Dismiss

"Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." Rubin v. Sona Intern. Corp, 457 F.Supp.2d 191, 198 (S.D.N.Y. 2006). Because the Court submits the questions of whether the Agreement is enforceable and the extent of the Agreement's scope to the arbitrators, none of Plaintiff's issues remain justiciable by the Court. Accordingly, the Court dismisses the action.[3]

### III. CONCLUSION

For the foregoing reason, Defendants' Motion to Dismiss the action is GRANTED. The Clerk of Court is directed to CLOSE the docket in this matter.

SO ORDERED.

Dated:   New York, New York
         March 31, 2009

Deborah A. Batts
United States District Judge

---

[3] The Court also reminds the parties that, under the provisions of the Arbitration Agreement, either party "may bring an action in a state or federal court of competent jurisdiction in Delaware to compel arbitration under this Arbitration Agreement and to enforce an arbitration award." (Arbitration Agreement at 2.) Furthermore, a party "opposing enforcement of an award may bring a separate action in a state or federal court of competent juridiction in Delaware to set asid the award" and "the [employee] consents to personal jurisdiction of the state and/or federal courts located in Delaware." (Id.)

7